CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
OCT 22 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JAMES DANIEL BRISCOE, | ) |
| | ) Civil Action No. 7:06cv00752 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| DR. MOSES, et al., | ) By: Hon. Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendants. | ) |

Plaintiff James Daniel Briscoe, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that defendants[1] refused to provide him with certain necessary medication to treat his osteoarthritis and prostatitis because of his inability to pay for the medication.[2] Briscoe seeks an unspecified amount of monetary damages from the New River Valley Jail ("NRVJ").[3] Defendants filed a motion for summary judgment to which Briscoe filed a timely response, making the matter ripe for disposition. Upon review of the record, I conclude that Briscoe has not stated a claim upon which relief can be granted. Accordingly, I will grant defendants' motion for summary judgment and dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

## I.

Summary judgment is proper where there is no genuine issue as to any material fact, and the

---

[1] By Order entered August 24, 2007, I dismissed all claims against defendant Beth Hubbard and directed the remaining defendants to submit supplemental motions for summary judgment supported by affidavits. The remaining defendants are Dr. Moses, New River Valley Jail ("NRVJ") medical director; Donnie Simpkins, NRVJ Superintendent; and Ford Wirt, NRVJ Authority Chairman. Gerald McPeak recently replaced Donnie Simpkins as the NRVJ Superintendent.

[2] Briscoe's second claim, concerning his participation in a work-release program, was dismissed by Order entered February 8, 2007.

[3] Briscoe filed his complaint while he was an inmate at the NRVJ; however, he was recently released from incarceration on September 22, 2007.

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at 256-57.

## II.

Briscoe alleges that has been denied medication necessary to treat his medical conditions of osteoarthritis and prostatitis. Briscoe claims that he requires "Naproxen, Tramodol, Flexarill [sic]," and "Cyclobenzaprine," otherwise marketed under the trade name "Flexeril," to help alleviate "chronic pain," and "muscle spasms due to . . . osteoarthritis of the spine and neck," and also "Doxazosin Mesylate," for prostate problems. (Pl.'s Statement Facts 1; Pl.'s Resp. Mot. Dismiss 1.) Briscoe alleges that Dr. Moses agreed to prescribe these medications and also Motrin, but informed Briscoe that the jail would not pay for them. Briscoe claims that the Motrin was

2

inadequate to treat his pain and that he suffered from urinary tract problems due to an enlarged prostate for several months. He believes that his "rights to proper medical care have been willfully violated by Dr. Moses because of [his] inability to pay for [his] care." (Pl.'s Statement Facts 2.) Briscoe further alleges that Donnie Simpkins and Ford Wirt instructed Dr. Moses as to this course of action.

Defendants agree that Briscoe suffers from osteoarthritis and prostatitis but contend that these conditions were properly treated with the appropriate medication during his incarceration at the NRVJ. According to the affidavit of Dr. Moses, NRVJ Medical Director, he was aware of Briscoe's medical conditions and also his history of substance abuse. Dr. Moses indicates that, prior to his incarceration, Briscoe was prescribed Naprosyn, Tramodol, Flexeril, and Cyclobenzaprine for his osteoarthritis condition. However, Dr. Moses contends that he did not renew those medications because, in his opinion, the medications sought by Briscoe were not medically necessary. Dr. Moses determined, based upon Briscoe's history and his own medical judgment, that Motrin was sufficient to treat Briscoe's osteoarthritis pain. Dr. Moses treated Briscoe for his prostate condition by prescribing the medication Doxazosin. Dr. Moses claims that Briscoe did not suffer any adverse results from the change in medication. Dr. Moses states that, to the best of his knowledge, the jail provided the medications that he determined to be medically necessary and that he prescribed, irrespective of Briscoe's ability to pay for the medication.[4]

Defendants further contend that the NRVJ, or its administrators, did not refuse to provide medically necessary medication because of Briscoe's financial inability to pay for the medication.

---

[4] Dr. Moses does indicate that Briscoe would have been allowed to take Naprosyn, a muscle relaxer, but that he was required to pay for the medication as it was not medically necessary.

3

According to the affidavit of Superintendent McPeak, the jail's medical policy provides that inmates are responsible for payment of their own medical bills and prescriptions but further provides that all necessary medical care, including prescriptions, will be provided, regardless of an inmate's ability to pay. McPeak explains that Chairman Wirt and Superintendent Simpkins had absolutely no control over the diagnosis and treatment of Briscoe. By policy, the facility may not direct the actions of the institutional physicians. Only a licensed physician can diagnose, treat, and prescribe medications.

### III.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly

4

authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Claims regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Furthermore, while there is not a constitutional right to free medical treatment while imprisoned, an inmate must be provided with the medical care. The allocation of the cost of the medical care is a matter of state law and, if the governmental entity can obtain the medical care needed for an inmate only by paying for it, then it must pay. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983). In short, the injured inmate's constitutional right is to receive the needed medical treatment; how the city or state obtains such treatment is not a federal constitutional question. Id.

Applying these principles, and taking Briscoe's allegations in the light most favorable to him, I conclude that they are insufficient to state claims under § 1983. Briscoe complains that Motrin was insufficient to alleviate his osteoarthritis pain, but the affidavit of Dr. Moses makes it clear that, in

5

his medical judgment, Motrin was a more appropriate pain reliever than the medication Briscoe requested. Although Briscoe may be dissatisfied with Dr. Moses' diagnosis method or prescribed treatment plan, these complaints amount to nothing more than disagreements between medical staff and an inmate as to proper diagnostic methods and a course of treatment, which are not actionable under the Eighth Amendment. Furthermore, I find that Briscoe's allegation that he was denied medication to treat his prostatitis is without merit. Briscoe's medical records reveal that he was prescribed Doxazosin on October 10, 2006, a few weeks after his arrival at the NRVJ. The records are void of any further complaints concerning prostate problems after that date. Finally, to the extent that Briscoe believes that Dr. Moses has failed to recognize or treat his medical needs, such a disagreement does not rise to the level of a federal constitutional violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-06.

Further, Briscoe offers no evidence upon which a reasonable factfinder could find in his favor on his claim concerning Chairman Wirt and Superintendent Simpkins. Defendants' affidavit evidence demonstrates that neither of these defendants is a physician or a trained medical provider, and that both defendants rely upon the medical expertise of the trained doctors at the NRVJ. Defendants' evidence makes it clear that Briscoe's medical conditions were evaluated and treated by Dr. Moses, and that Dr. Moses made the treatment decisions. The evidence indicates that defendants Wirt and Simpkins reasonably relied upon the medical judgment of Dr. Moses. Briscoe has not shown that Chairman Wirt and Superintendent Simpkins personally or intentionally delayed, denied, or otherwise interfered with his access to medical care. Estelle, 429 U.S. 104-05; Miltier, 896 F.2d at 854.

## IV.

For the stated reasons, I will grant defendants' motion for summary judgment. Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of this Memorandum Opinion, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk of the Court is directed to send a copy of Memorandum Opinion and Order to plaintiff and to counsel of record for defendants.

**ENTER**: This 22nd day of October, 2007.

Senior United States District Judge